# Exhibit A

**12-Person Jury**

FILED
2/15/2019 11:57 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02032

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| ERIC KROHM, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No.   2019CH02032 |
| v. | ) ) | |
| EPIC GAMES, INC., a Maryland corporation, | ) ) ) | Hon. |
| *Defendant.* | ) ) ) | **Jury Demanded** |

### CLASS ACTION COMPLAINT & JURY DEMAND

Plaintiff Eric Krohm ("Plaintiff"), individually and on behalf of a class of similarly situated persons, brings this Class Action Complaint against Epic Games, Inc., ("Defendant" or "Epic Games"), due to its actions and inactions resulting in a catastrophic cybersecurity vulnerability (the "Vulnerability") in Defendant's global-hit video game, Fortnite. Plaintiff alleges as follows based on personal knowledge as to his own acts and experiences, and as to all other matters, upon information and belief, including an investigation conducted by his attorneys.

### INTRODUCTION

1.   Defendant Epic Games is the developer of Fortnite, one of the most popular video games ever produced with tens of millions of active monthly users across the globe.

2.   Defendant's Fortnite video game generates hundreds of millions of dollars in annual revenue, a significant portion of which is derived from players' in-game purchases of items such as outfits, or "skins," for their in-game characters. In order to make an in-game purchase, Defendant requires players to purchase and utilize its own Fortnite currency called "Vbucks."

3.   Around or before November 2018, Defendant became aware of a significant cybersecurity Vulnerability in its Fortnite video game that allowed cyber-criminals and

FILED DATE: 2/15/2019 11:57 AM   2019CH02032

unauthorized third parties to hijack player accounts and access players' personally identifiable information ("PII"), credit card and payment information ("Payment Information"), and other sensitive data associated with the players' respective accounts.

4.      After hijacking a respective player's Fortnite account, a cyber-criminal is then able to make in-game purchases of Vbucks in order to resell the same on the criminal black market.

5.      Indeed, Defendant's Vbucks currency is a lucrative item for cybercriminals, and Defendant is fully cognizant of the substantial criminal activity surrounding the fraudulent acquisition of Vbucks.

6.      In addition to exposing the PII and Payment Information of Fortnite players, the Vulnerability also enabled unauthorized parties to covertly listen in on the conversations of Fortnite players, many of which are minors, thereby constituting a severe breach of privacy.

7.      Even though Defendant knew that it was storing sensitive information which was valuable and vulnerable to cyber attackers, particularly credit card and other Payment Information, Defendant nonetheless failed to take basic security precautions that could have prevented, and certainly at least mitigated, the ramifications of the Vulnerability.

8.      Defendant's lax cybersecurity policies and procedures created the Vulnerability that allowed hackers to obtain access to Plaintiff's and other players' PII and Payment Information.

9.      Even if certain of the PII and Payment Information made available to hackers as a result of the Vulnerability is not being *presently* used for identity theft, any such PII and Payment Information that has been stored and/or sold for *future* misuse and/or sale are likewise at highly imminent risk of unauthorized disclosure.

10. A lucrative criminal black market exists for PII and, in particular, Payment Information. These items increase in value when associated with active user accounts, which are then subject to highly targeted spam and phishing attack campaigns.

11. Further, even after being made aware of the Vulnerability by a leading cybersecurity research firm, Defendant nonetheless failed to remedy the Vulnerability within a reasonable time and failed to employ a reasonable notification protocol to alert Plaintiff and other Fortnite players of the Vulnerability.

12. To this day, Plaintiff continues to rely on his own time, efforts, and expense to monitor and assess the extent to which his valuable PII and Payment Information was compromised due to the Vulnerability, and Plaintiff will need to continually monitor his accounts into the foreseeable future.

13. On behalf of himself and the proposed Classes defined below, Plaintiff seeks equitable and monetary damages, together with costs and reasonable attorneys' fees

## PARTIES

14. Defendant Epic Games, Inc., is a Maryland corporation that is headquartered in North Carolina. Epic Games markets and offers its products and services, including the subject Fortnite video game, throughout Illinois and Cook County.

15. Plaintiff Eric Krohm is a resident and citizen of the State of Illinois.

## JURISDICTION AND VENUE

16. This Court may assert personal jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 in accordance with the Illinois Constitution and the Constitution of the United States because Defendant is doing business within this State and intentionally markets its products and

3

FILED DATE: 2/15/2019 11:57 AM   2019CH02032

services, including the subject Fortnite video game, in this State to Illinois residents. Tens, if not hundreds, of thousands of Illinois residents play Defendant's Fortnite game on a regular basis.

17.     Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, because Defendant is doing extensive business throughout Cook County and because the transaction which forms the primary basis for this lawsuit occurred in Cook County.

## FACTS SPECIFIC TO PLAINTIFF

18.     Defendant Epic Games is the developer of Fortnite, one of the most popular and successful video games in the United States and across the globe.

19.     Like millions of other Fortnite players, Plaintiff was required to create an account with Defendant in order to play. Defendant required Plaintiff to provide certain PII in order to create his account, and also enabled and encouraged him to store his Payment Information for future purchases of Vbucks, Defendant's in-game currency for Fortnite which enables players to make in-game purchases.

20.     In order to make prospective account holders more comfortable with providing their Payment Information and other PII during the registration process, Defendant expressly promised to maintain appropriate technical safeguards to protect user account holders' PII and Payment Information from accidental, unlawful, or unauthorized destruction, loss, alteration, access, disclosure, or use.

21.     Plaintiff entrusted Defendant with his PII and Payment Information with the belief and understanding that Defendant would implement reasonable cybersecurity protocols to protect the same, or at least reasonably notify him of any irregularities. Plaintiff would not have otherwise provided his PII and Payment Information to Defendant.

4

FILED DATE: 2/15/2019 11:57 AM   2019CH02032

22.     Around or before November 2018, a leading cybersecurity research firm alerted Defendant to the subject Fortnite Vulnerability which allowed cyber-criminals and unauthorized third parties to access and extract PII, Payment Information, and other sensitive data associated with the player accounts.

23.     The Vulnerability existed because Defendant failed to implement a basic precautionary technical measure that would have prevented unauthorized third-parties the ability to retrieve and reuse the "security tokens" associated with Plaintiff's and other user's accounts. Once armed with the security token for a given account, a hacker is able to access and utilize every feature of such account, including the ability to make purchases of Defendant's Vbucks currency using the account Payment Information.

24.     Such security-token-jacking schemes are increasingly common, and any reasonably-robust cybersecurity and information technology regime must account for the ultimate disposition, including reusability, of security tokens. Defendant has failed in this regard.

25.     The Vulnerability allowed unauthorized parties the ability to extract and store players' PII and Payment Information for future misuse and/or resell on the criminal black market. Thus, Plaintiff will need to constantly monitor his PII and Payment Information that has been stored for *future* misuse or sale.

26.     Defendant is aware that Vbucks are a lucrative item for cybercriminals and that its players are frequently targeted by hackers and scammers seeking to fraudulently obtain Vbucks, as well as the PII and Payment Information frequently associated with Fortnite player accounts. Notably, Defendant's Fortnite title was the target of a data hack in the summer of 2018 which affected millions of its players' accounts.

FILED DATE: 2/15/2019 11:57 AM    2019CH02032

27.     Despite its awareness that its Fortnite title is constantly the target of hackers, Defendant nonetheless failed to implement reasonable technical measures to detect irregularities in its systems, such as the subject Vulnerability. Rather, a benevolent third-party research firm detected the Vulnerability.

28.     The Vulnerability also allowed unauthorized parties the ability to covertly eavesdrop on the in-game conversations between Fortnite players.

29.     Defendant's lax cybersecurity policies and procedures created the Vulnerability that allowed hackers to obtain access to Plaintiff's and other players' PII and Payment Information.

30.     Defendant also failed to remedy the Vulnerability within a reasonable time after being made aware of its existence and failed to reasonably and timely notify Plaintiff and other affected Fortnite account holders. These failures not only increased the scope of the Vulnerability, but also allowed unauthorized parties additional time to extract and store PII and Payment Information for future misuse and/or sale.

31.     For at least several weeks, unauthorized third parties were able to freely access, extract, misuse or sell, or store for future misuse or sale, the PII and Payment Information of millions of Defendant's customers, including Plaintiff.

32.     As a result of Defendant's conduct regarding the Vulnerability, Plaintiff faces the certain costs, time, and other palpable expenses associated with continuously monitoring his accounts for the foreseeable future.

33.     Despite the severity of the Vulnerability, by failing to take prompt measures to alert Plaintiff and other customers that their PII and Payment Information had been compromised, Defendant exposed consumers to an increased risk of identity theft and other harms.

6

34.     Had Defendant informed Plaintiff of the Vulnerability within a reasonable period as required by law and/or through a reasonable manner and medium, Plaintiff and the other customers would have been able to take actions to protect their identities, credit card and debit accounts, and other potential targets from further or imminently-future misuse. Instead Defendant let its customers languish in ignorance as to the privacy harms presented by the Vulnerability.

35.     Defendant's failure to comply with its own express policies and other reasonable data security standards provided Defendant a benefit in the form of saving on the costs of compliance, but at the expense and severe detriment of Defendant's own customers, including Plaintiff.

36.     Since recently becoming aware of the vulnerability, Plaintiff has taken time and effort to mitigate the risk of identity theft, including changing account passwords and constantly expending time, effort, and expense in monitoring credit and other financial information.

37.     Defendant itself even recommended that Plaintiff and other Fortnite players "use[] strong passwords," *i.e.* spend additional time and effort (and expense) in securing their accounts.

38.     Plaintiff has also been harmed by having his PII and Payment Information compromised and faces the imminent and impending threat of future additional harm from any future misuse or sale of his PII and Payment Information by unknown third parties.

39.     Plaintiff also experiences mental anguish as a result of Defendant's Vulnerability exposing or otherwise making freely available his PII and Payment Information to third party hackers. For example, he experiences anxiety and anguish when thinking about what would happen if his identity is stolen as a result of the Vulnerability; when considering that, because his PII and Payment Information may have been stored for future misuse and sale, how he will need to constantly monitor his accounts for the foreseeable future; and when he thinks about the fact that

7

Defendant was aware of the Vulnerability and actively decided to keep him and the other victims of the Vulnerability in the dark.

40.    The Vulnerability was caused and enabled by Defendant's violations of its own express commitments to its customers to implement appropriate technical safeguards, as well as its preexisting obligations to abide by adequate practices and industry standards in protecting customers' PII and Payment Information. Defendant wholly failed to comply with reasonable cybersecurity standards.

## CLASS ALLEGATIONS

41.    Plaintiff brings Counts I through IV, as set forth below, on behalf of himself and a Class and Subclass (together, the "Class" unless otherwise noted) of similarly situated individuals pursuant to 735 ILCS § 5/2-801. The Class and Subclass are defined as follows:

**Class:** All persons whose PII and/or Payment Information was in the possession of Defendant at any time during the two-month period starting at the beginning of November 2018 through the end of December 2018.

**Illinois Subclass:** All Illinois residents whose PII and/or Payment Information was in the possession of Defendant at any time during the two-month period starting at the beginning of November 2018 through the end of December 2018.

42.    Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officer or director.

43.    Upon information and belief, there are hundreds of thousands, if not millions, of members of the Class, making the Class so numerous that joinder of all members is impracticable. Although the exact number of Class members is currently unknown to Plaintiff, the members can easily be ascertained through Defendant's records.

8

44.     Plaintiff's claims are typical of the claims of the Class members he seeks to represent because the factual and legal bases of Defendant's liability to Plaintiff and the other Class members are the same and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class members. As alleged herein, Plaintiff and the other Class members have all suffered similar injuries as a result of Defendant's actions and inactions surrounding the subject Vulnerability and exposing their PII and Payment Information.

45.     There are many questions of law and fact common to the claims of Plaintiff and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not limited to, the following:

a.     Whether Defendant implemented adequate technical, administrative, and physical safeguards to prevent the Vulnerability;

b.     Whether Defendant implemented adequate technical, administrative, and physical safeguards to detect the Vulnerability;

c.     Whether Defendant implemented adequate technical, administrative, and physical safeguards to reasonably mitigate the Vulnerability;

d.     Whether Plaintiff and the Class members were notified of the Vulnerability within a reasonable period of time and through a reasonable method;

e.     Whether implied or express contracts existed between Defendant and the Class members;

f.     Whether Plaintiff and the Class members sustained damages as a result of the Vulnerability;

g.     Whether Defendant's PII storage and protection protocols and procedures were reasonable under industry standards;

h.     Whether Defendant's cybersecurity prevention, detection, and notification protocols were reasonable under industry standards;

i.     Whether Defendant misrepresented the safety and security of the Class members' PII maintained by Defendant;

      j.     When Defendant became aware of the unauthorized access to Plaintiff's and the Class members' PII; and

      k.     When/if Defendant completely cured the Vulnerability.

46.    Absent a class action, most Class members would find the cost of litigating their claims to be prohibitively expensive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

47.    Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class he seeks to represent. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

48.    Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act,**
**815 ILCS 505/1, *et seq*.**
**(On behalf of Plaintiff and the Subclass)**

49.    Plaintiff realleges by reference the foregoing allegations as if fully set forth herein.

50.    Pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, *et seq*. ("PIPA"), Defendant was required to implement and maintain reasonable security measures to protect Plaintiff's and Illinois Subclass members' PII, and to notify them regarding any

FILED DATE: 2/15/2019 11:57 AM 2019CH02032

unauthorized disclosure in the most expedient time possible and without unreasonable delay. This duty required Defendant to not only implement reasonable protocols to detect and prevent the Vulnerability, but also to reasonably mitigate the same.

51. Defendant was also obligated under PIPA to notify Plaintiff and the Illinois Subclass of the Vulnerability in the most expedient time possible and without unreasonable delay.

52. Defendant's conduct alleged herein resulting in the Vulnerability, thereby failing to safeguard its customers' PII and Payment Information, and subsequent failure to adequately notify its customers, constitute a violation of PIPA.

53. Pursuant to Section 530/20 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), Defendant's PIPA violation is itself deemed an "unlawful practice" and a distinct violation under the ICFA.

54. As a result of Defendant's violation of the ICFA vis-à-vis its PIPA violation, Plaintiff and the Illinois Subclass have suffered actual pecuniary and non-pecuniary harms.

55. Wherefore, Plaintiff prays for relief as set forth below.

## COUNT II
### Breach of Contract
### (On behalf of Plaintiff and the Class and Subclass)

56. Plaintiff realleges by reference the foregoing allegations as if fully set forth herein.

57. Plaintiff and the Class members are parties to express agreements with Defendant whereby Plaintiff and the Class members provide their PII and Payment Information to Defendant in exchange for the ability to play Fortnite, as well as purchase the in-game products and service advertised by Defendant within Fortnite.

58. Such agreement expressly included the provision of reasonable technical safeguards to prevent the unauthorized disclosure of, and reasonable notification for irregularities concerning, Plaintiff's and Class members' PII and Payment Information

11

FILED DATE: 2/15/2019 11:57 AM    2019CH02032

59.     As alleged herein, Defendant's actions, inactions, and failures concerning its cybersecurity and information technology protocol, as well as its conduct leading up to, surrounding, and following the Vulnerability, constitutes a breach of contract.

60.     Plaintiff and the Class members would not have provided and entrusted their PII and Payment Information to Defendant the absence of an agreement with Defendant to reasonably safeguard the same and to reasonably notify them of unauthorized disclosures or irregularities concerning the same.

61.     Plaintiff and the members of the Class fully performed their obligations under their respective contracts for the utilization of and purchases associated with Defendant's Fortnite products and services.

62.     The damages expressed herein as sustained by Plaintiff and the Class members were the direct and proximate result of Defendant's breaches of contract.

63.     Wherefore Plaintiff prays for the relief set forth below.

## <u>COUNT III</u>
**Breach of Implied Contract**
**(On behalf of Plaintiff and the Class and Subclass) (in the alternative to Count II)**

64.     Plaintiff realleges by reference Paragraph 1 through 47 as if fully set forth herein.

65.     Plaintiff and the Class members provided their PII and Payment Information to Defendant in exchange for the ability to play Fortnite and utilize the in-game products and services.

66.     To the extent that it is found that Defendant did not have express agreements with Plaintiff and the Class members, Defendant entered into implied contracts with Plaintiff and the Class members. By virtue of the requirement to provide their PII and Payment Information and Defendant's collection, storage, and use of the same, Plaintiff and the Class members and Defendant entered into implied contracts where Defendant was obligated to provide appropriate technical protections and to take reasonable other steps to secure and safeguard such PII and

12

FILED DATE: 2/15/2019 11:57 AM    2019CH02032

Payment Information and obligated to take reasonable steps leading up to, surrounding, and following the Vulnerability.

67.     As alleged herein, Defendant's actions, inactions, and failures concerning its cybersecurity and information technology protocol, as well as its conduct leading up to, surrounding, and following the Vulnerability, constitutes a breach of contract.

68.     Plaintiff and the Class members would not have provided and entrusted their PII and Payment Information to Defendant in the absence of an agreement with Defendant to reasonably safeguard the same and to reasonably notify them of unauthorized disclosures or irregularities concerning the same.

69.     Plaintiff and the members of the Class fully performed their obligations under their respective contracts for the utilization of and purchases associated with Defendant's Fortnite products and services.

70.     The damages expressed herein as sustained by Plaintiff and the Class members were the direct and proximate result of Defendant's breaches of contract.

71.     Wherefore Plaintiff prays for the relief set forth below.

**<u>COUNT IV</u>**
**Negligence**
**(On behalf of Plaintiff and the Class and Subclass)**

72.     Plaintiff realleges by reference the foregoing allegations as if fully set forth herein.

73.     By virtue of enabling Plaintiff and Class members to provide their PII and Payment Information as a condition to utilizing Fortnite's in-game products and services, including Defendant's Vbucks currency, Defendant had a duty, or assumed a duty, to implement reasonable data privacy and cybersecurity protocol, including adequate prevention, detection, and notification procedures, in order to safeguard the PII and Payment Information of the Plaintiff and the Class members and to prevent the unauthorized access to and disclosures of the same.

13

FILED DATE: 2/15/2019 11:57 AM    2019CH02032

74.    As alleged herein, Defendant's actions, inactions, and failures concerning its cybersecurity and information technology protocol, as well as its conduct leading up to, surrounding, and following the Vulnerability, constitutes a breach of such duty.

75.    Defendant also breached its duties in one or more of the following ways:

a.    Failing to implement reasonable data privacy and cybersecurity measures to secure Plaintiff's and Class members' PII and Payment Information;

b.    Failing to implement reasonable policies, procedures, and technical measures to address the disposition and reusability of security tokens;

c.    Failing to reasonably notify Plaintiff and Class members that their PII and Payment Information was exposed due to the Vulnerability;

d.    Failing to implement reasonable policies, procedures, and technical, administrative, and physical safeguards to detect and analyze irregularities in its information systems, such as the subject Vulnerability; and

e.    Otherwise failing to act reasonably under the circumstances and being negligent and careless with regard to its conduct in preventing, detecting, and disclosing the subject Vulnerability.

76.    As a direct result of Defendant's aforesaid negligent acts and omissions, Plaintiff and the Class members suffered pecuniary and non-pecuniary injury and damages, including the loss of their legally protected interest in the confidentiality and privacy of their PII and Payment Information and injury in the form of time and expense to mitigate the same.

77.    Wherefore, Plaintiff prays for the relief set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class and Subclass set forth above, respectfully requests the Court order relief and enter judgement against Defendant:

A.    Certifying the Class and Subclass identified above and appointing Plaintiff as Class representative and the undersigned counsel as Class counsel;

FILED DATE: 2/15/2019 11:57 AM   2019CH02032

B.      Awarding Plaintiff and the Class and Subclass appropriate relief, including actual, compensatory, and/or punitive damages;

C.      Requiring Defendant to furnish identity fraud monitoring and mitigation services for a reasonable period of time;

D.      Granting injunctive relief requiring Defendant to implement commercially reasonable security measures to properly guard against future cyberattacks and to provide prompt, reasonable notification in the event of such an attack;

E.      Requiring Defendant to pay Plaintiff's and the Class members' reasonable attorneys' fees, expenses, and costs; and

F.      Any such further relief as this Court deems reasonable and just.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.


Dated: February 15, 2019                    Respectfully submitted:
                                            ERIC KROHM, individually and on behalf
                                            of a class of similarly situated individuals


                                            By: /s/ Jad Sheikali
                                            *One of Plaintiff's Attorneys*


Myles McGuire
Jad Sheikali
Timothy P. Kingsbury
MCGUIRE LAW, P.C. (Firm ID 56618)
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
(312) 893-7002
mmcguire@mcgpc.com
jsheikali@mcgpc.com
tkingsbury@mcgpc.com


*Attorneys for Plaintiff and the Putative Classes*

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/19/2019 12:40 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02032

FILED DATE: 2/19/2019 12:40 PM    2019CH02032

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |
|---|---|
| ERIC KROHM, individually and on behalf of similarly situated individuals, | ) ) ) |
| *Plaintiff,* | ) ) No. 19-CH-02032 |
| v. | ) ) |
| EPIC GAMES, INC., a Maryland corporation, | ) Hon. Celia G. Gamrath ) ) **Jury Demanded** |
| *Defendant.* | ) ) |

### PLAINTIFF'S MOTION FOR CLASS CERTIFICATION OR, ALTERNATIVELY, FOR A DEFERRED CLASS CERTIFICATION RULING PENDING DISCOVERY

Plaintiff Eric Krohm, by and through his undersigned counsel, pursuant to 735 ILCS 5/2-801, moves for entry of an order certifying the Class proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. Alternatively, Plaintiff requests, to the extent the Court determines further evidence is necessary to prove any element of 735 ILCS 5/2-801, that the Court defer consideration of this Motion pending a reasonable period to complete discovery. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶¶ 42–43 (citing *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896–97 (7th Cir. 2011). In support of his Motion, Plaintiff submits the following Memorandum of Law.

Dated: February 19, 2019

Respectfully Submitted,

ERIC KROHM, individually and on behalf of a class of similarly situated individuals

By: /s/        Jad Sheikali
*One of Plaintiff's Attorneys*

Myles McGuire
Jad Sheikali

1

FILED DATE: 2/19/2019 12:40 PM   2019CH02032

Timothy P. Kingsbury
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
jsheikali@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the Putative Classes*

2

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CLASS CERTIFICATION OR, ALTERNATIEY, FOR**
<u>**A DEFFERED CLASS CERTIFICATION RULING PENDING DISCOVERY**</u>

This Court should certify a class of individuals whose personal information ("PII") and/or

Payment Information was in the possession of Defendant Epic Games, Inc. ("Defendant" or "Epic

Games") at any time during the two-month period starting at the beginning of November 2018

through the end of December 2018 (the "Vulnerability"), and an Illinois-only subclass of all

Illinois residents similary affected by the Vulnerability.

Defendant is the developer and owner of a globally-leading video game, Fortnite. After

Plaintiff learned of Defendant's failure to implement a reasonably adequate cyber-risk prevention,

detection, and response protocol for its Fortnite title, he brought suit on behalf of a class of

similarly situated individuals to obtain redress for all persons injured by Defendant's conduct.

I.    <u>**FACTUAL BACKGROUND**</u>

    A.    **The Underlying Misconduct.**

Around or before November 2018, Defendant became aware of a significant Vulnerability

in its Fortnite title, compromising the PII of millions of its customers. (Compl. ¶¶ 2-6). Plaintiff

alleges that the Vulnerability was caused by Defendant's failure to implement a reasonably

adequate cyber-risk prevention, detection, and response protocol, including procedures for

disposing of "login security tokens." (Compl. ¶¶ 7-8, 23-24).

As a result of Defendant's conduct leading up to, surrounding, and following the subject

Vulnerability, Plaintiff and the other class members have incurred both pecuniary and non-

pecuniary injuries, including having their PII and Payment Information exposed, having to spend

time, expense, and effort mitigating further privacy injuries, mental anguish, and other legally

cognizable informational injuries. (Compl. ¶¶ 36-39).

FILED DATE: 2/19/2019 12:40 PM 2019CH02032

**B.     The Proposed Classes**

Plaintiff brings this action on behalf of himself and a Class and Subclass (the "Class") of

similarly situated individuals pursuant to 735 ILCS § 5/2-801. The Class is defined as follows:

> **Class:** All persons whose PII and/or Payment Information was in the possession of
> Defendant at any time during the two-month period starting at the beginning of November
> 2018 through the end of December 2018.
>
> **Illinois Subclass:** All Illinois residents whose PII and/or Payment Information was in the
> possession of Defendant at any time during the two-month period starting at the beginning
> of November 2018 through the end of December 2018..

(Compl. ¶ 41.) As explained below, the proposed Class satisfies each of the four requirements for

certification under Section 2-801 of the Illinois Code of Civil Procedure—numerosity,

commonality, adequacy of representation, and fair and efficient adjudication. A class action is not

just appropriate here, it is also the only way that the members of the putative Class can obtain

appropriate redress for Defendant's unlawful conduct.

**II.     ARGUMENT**

**A.     Standards for Class Certification**

To obtain class certification, it is not necessary for a plaintiff to establish that he will prevail

on the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("[T]he

question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the

merits, but rather whether the requirements of Rule 23 are met." (internal quotation marks and

citation omitted)). As such, in determining whether to certify a proposed class, the Court should

accept the allegations of the complaint as true. *Ramirez v. Midway Moving & Storage, Inc.*, 378

Ill. App. 3d 51, 53 (1st Dist. 2007).

To proceed with a class action, the movant must satisfy the "prerequisites for the

maintenance of a class action" set forth in Section 2-801 of the Illinois Code of Civil Procedure,

4

which provides:

> An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:
>
> (1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interest of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As demonstrated below, each prerequisite is established for the Class, and the Court should therefore certify the proposed Class.

Section 2-801 is modeled after Rule 23 of the Federal Rules of Civil Procedure and "federal decisions interpreting Rule 23 are persuasive authority with regard to questions of class certification in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (Ill. 2005). Circuit courts have broad discretion in determining whether a proposed class meets the requirement for class certification and ought to err in favor of maintaining class certification. *Ramirez*, 378 Ill. App. 3d at 53. While a court may rule on class certification without requiring further discovery, *see* Manual for Complex Litigation (Fourth) § 21.14, at 255 (2004), courts have found that discovery is helpful prior to addressing a motion for class certification. *See, e.g., Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*, 2015 IL 118644, at ¶ 42 ("If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.") (quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)).

All the prerequisites for class certification are satisfied here, even though Plaintiff has not yet had an opportunity to engage in and complete discovery. However, in the interests of

FILED DATE: 2/19/2019 12:40 PM   2019CH02032

5

establishing a more fully developed record before ruling on class certification issues, the Court should defer ruling on this Motion pending the completion of discovery and submission of supplemental briefing.

**B.    The Numerosity Requirement is Satisfied**

The first step in certifying a class is a showing that "the class is so numerous that joinder of all members is impracticable." 735 ILCS 5/2-801(1). This requirement is met when "join[ing] such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (1st Dist. 1991) (citing *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 337 (Ill. 1977)). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members but, must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006).

Plaintiff alleges that there are at least hundreds of thousands of members of the Class. (Complaint at ¶ 43.) Because definitive evidence of numerosity can only come from the records of Defendant and its agents, it is proper to rely upon the allegations of the Complaint in certifying the Class. *See* 2 A. Conte & H. Newberg, Newberg on Class Actions § 7.20, at 66 (stating that where numerosity information is in the sole possession of the party opposing the class, courts generally rely on the complaint as prima facie evidence or defer ruling).

Additionally, the members of the putative Class can be easily and objectively determined from Defendant's records. Furthermore, it would be completely impracticable to join the claims of the members of the Class, because they are disbursed throughout Illinois, and because absent a class action, few members could afford to bring an individual lawsuit over the amounts at issue in this case, since each individual member's claim is relatively small. *See Gordon*, 224 Ill. App. 3d

6

FILED DATE: 2/19/2019 12:40 PM 2019CH02032

at 200. Accordingly, the first prerequisite for class certification is met.

**C.      Common Questions of Law and Fact Predominate**

The second requirement of Section 2-801(2) is met where there are "questions of fact or law common to the class" and those questions "predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2). Such common questions of law or fact exist when the members of the proposed class have been aggrieved by the same or similar misconduct. *See Miner v. Gillette Co.,* 87 Ill.2d 7, 19 (Ill. 1981); *Steinberg*, 69 Ill.2d at 342. These common questions must also predominate over any issues affecting individual class members. *See O-Kay Shoes, Inc. v. Rosewell*, 129 Ill. App. 3d 405, 408 (1st Dist. 1984).

Here, the claims of the Class members arise out of the same conduct by Defendant and the same event, *i.e.* the Vulnerability, are based on the same legal theory, and implicate, among others, the following common issues: whether Defendant implemented adequate technical, administrative, and physical safeguards to prevent the Vulnerability, Defendant implemented adequate technical, administrative, and physical safeguards to detect the Vulnerability, Defendant implemented adequate technical, administrative, and physical safeguards to reasonably mitigate the Vulnerability, whether implied or express contracts existed between Defendant and the Class members, and when Defendant became aware of the subject Vulnerability. (Compl. ¶ 45.)

As alleged, and as will be shown through obtainable evidence, any potential individualized issues remaining after common issues are decided would be *de minimis*. Accordingly, common issues of fact and law predominate over any individual issues, and Plaintiff has satisfied this hurdle to certification.

**D.      Adequate Representation**

The third prong of Section 2-801 requires that "[t]he representative parties will fairly and

FILED DATE: 2/19/2019 12:40 PM   2019CH02032

adequately protect the interest of the class." 735 ILCS 5/2-801(3). The class representative's interests must be generally aligned with those of the class members, and class counsel must be "qualified, experienced and generally able to conduct the proposed litigation." *See Miner*, 87 Ill.2d at 14; *see also Eshaghi v. Hanley Dawson Cadillac Co., Inc.*, 214 Ill. App. 3d 995, 1000 (1st Dist. 1991). The purpose of this adequacy of representation requirement is "to insure that all Class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Purcell & Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1078 (1st Dist. 1988).

In this case, Plaintiff has the exact same interest as the members of the proposed Class. Plaintiff has alleged that, like the other members of the Class, he suffered injuries as a result of his PII being exposed by Defendant's Vulnerability. Plaintiff's pursuit of this matter against Defendant demonstrates that he will be a zealous advocate for the Class. Further, proposed class counsel has regularly engaged in major complex and class action litigation in state and federal courts and have been appointed as class counsel in several complex consumer class actions. (*See* Declaration of Jad Sheikali, attached hereto as Exhibit A). Accordingly, the proposed class representative and proposed class counsel will adequately protect the interests of the members of the Classes, thus satisfying Section 2-801(3).

### E.     Fair and Efficient Adjudication of the Controversy

The final requirement for class certification under 5/2-801 is met where "the class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). "In applying this prerequisite, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App. 3d at 203. In

8

FILED DATE: 2/19/2019 12:40 PM 2019CH02032

practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Gordon*, 224 Ill. App. 3d at 204; *Purcell & Wardrope Chtd.*, 175 Ill. App. 3d at 1079 ("The predominance of common issues [may] make a class action . . . a fair and efficient method to resolve the dispute."). Because numerosity, commonality and predominance, and adequacy of representation have been satisfied in the instant case, it is "evident" that the appropriateness requirement is met as well.

Other considerations further support certification in this case. A "controlling factor in many cases is that the class action is the only practical means for class members to receive redress." *Gordon*, 586 N.E.2d at 467; *Eshaghi*, 574 N.E.2d at 766 ("In a large and impersonal society, class actions are often the last barricade of...protection."). A class action is superior to multiple individual actions "where the costs of litigation are high, the likely recovery is limited" and individuals are unlikely to prosecute individual claims absent the cost-sharing efficiencies of a class action. *Maxwell*, 2004 WL 719278, at \*6. This is especially true in cases involving data privacy violations and data breaches, which can involve significant injury to the those effected, but result in many small, individual claims. Here, absent a class action, most members of the Class would find the cost of litigating their statutorily-limited claims to be prohibitive, and multiple individual actions would be judicially inefficient. *Id.*

Certification of the proposed Class is necessary to ensure that Defendant's conduct becomes compliant, to ensure that the Class members' privacy rights are sufficiently protected, and to compensate those individuals who have had their privacy rights violated. Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of Class members would be able to obtain redress, or that Defendant would willingly implement the procedures necessary to honor the requirements of the statute. Thus, proceeding as a class action here is an appropriate

9

Case 5:19-cv-00173-BO Document 1-1 Filed 04/08/19 Page 25 of 34

method to fairly and efficiently adjudicate the controversy.

## III.    CONCLUSION

For the reasons set forth above, the requirements of 735 ILCS 5/2-801 are satisfied.
Plaintiff respectfully request that the Court enter an Order certifying the proposed Class,
appointing Plaintiff as Class Representative, appointing McGuire Law, P.C. as Class Counsel, and
awarding such additional relief as the Court deems reasonable. Alternatively, the Court should
defer ruling on this Motion pending the completion of appropriate discovery and supplemental
briefing.

Dated: February 19, 2019                     Respectfully Submitted,

                                             ERIC KROHM, individually and on behalf of a class
                                             of similarly situated individuals

                                             By: /s/         Jad Sheikali
                                                      *One of Plaintiff's Attorneys*

Myles McGuire
Jad Sheikali
Timothy P. Kingsbury
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
mmcguire@mcgpc.com
jsheikali@mcgpc.com
tkingsbury@mcgpc.com

*Attorneys for Plaintiff and the Putative Classes*

10

FILED DATE: 2/19/2019 12:40 PM   2019CH02032

## CERTIFICATE OF FILING

The undersigned, an attorney, hereby certifies that on February 19, 2019, a copy of *Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery* was filed electronically with the Clerk of Court using the e-filing system.

<u>      Jad Sheikali      </u>

11

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

FILED
2/19/2019 12:40 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02032

FILED DATE: 2/19/2019 12:40 PM    2019CH02032

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| ERIC KROHM, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff,* | ) ) | No. 19-CH-02032 |
| v. | ) ) ) | Hon. Celia G. Gamrath |
| EPIC GAMES, INC., a Maryland corporation, | ) ) ) | **Jury Demanded** |
| *Defendant.* | ) ) | |

### DECLARATION OF JAD SHEIKALI

I, Jad Sheikali, hereby aver, pursuant to 735 ILCS 5/1-109, that I have personal knowledge of all matters set forth herein unless otherwise indicated and would testify thereto if called as a witness in this matter.

1.  I am an adult over the age of 18 and a resident of the State of Illinois.

2.  I am fully competent to make this Declaration and I do so in support of Plaintiff's Motion for Class Certification or, Alternatively, for a Deferred Class Certification Ruling Pending Discovery.

3.  I am an associate of the law firm McGuire Law, P.C. I am licensed to practice law in the State of Illinois, and I am one of the attorneys representing the Plaintiff in this matter.

4.  McGuire Law, P.C. is a litigation firm based in Chicago, Illinois that focuses on class action litigation, representing clients in both state and federal trial and appellate courts throughout the country.

5.  The attorneys of McGuire Law, P.C. have regularly engaged in complex litigation on behalf of consumers and have extensive experience prosecuting class action lawsuits similar in

1

FILED DATE: 2/19/2019 12:40 PM    2019CH02032

size and complexity to the instant case. Attorneys at my firm have served as class counsel in numerous complex consumer class actions. *See, e.g., Shen et al v. Distributive Networks, Inc.* (N.D. Ill. 2007); *McFerren et al v. AT&T Mobility, LLC* (Sup. Ct. Fulton County, Ga. 2008); *Gray et al v. Mobile Messenger Americas, Inc. et al.,* (S.D. Fla. 2008); *Gresham et al v. Keppler & Associates, LLC et al.,* (Sup. Ct. Los Angeles County, Cal. 2008); *Weinstein et al v. The Timberland Co., et al.* (N.D. Ill. 2008); *Sims et al v. Cellco Partnership* et al., (N.D. Cal. 2009); *Van Dyke et al v. Media Breakaway, LLC et al.,* (S.D. Fla. 2009); *Paluzzi, et al. v. mBlox, Inc., et al.,* (Cir. Ct. Cook County, Ill. 2009); *Valdez et al v. Sprint Nextel Corporation* (N.D. Cal. 2009); *Parone et al v. m-Qube, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2010); *Satterfield et al v. Simon & Schuster* (N.D. Cal. 2010); *Espinal et al v. Burger King Corporation et al.,* (S.D. Fla. 2010); *Lozano v. Twentieth Century Fox,* (N.D. Ill. 2011); *Williams et al v. Motricity, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2011); *Walker et al v. OpenMarket, Inc. et al.,* (Cir. Ct. Cook County, Ill. 2011); *Schulken at al v. Washington Mutual Bank, et al.,* (N.D. Cal. 2011); *In re Citibank HELOC Reduction Litigation* (N.D. Cal 2012); *Kramer et al v. Autobytel* et al., (N.D. Cal. 2011); *Rojas et al v. Career Education Co.* (N.D. Ill. 2012); *Ellison et al v. Steven Madden, Ltd.* (C.D. Cal. 2013); *Robles et al v. Lucky Brand Dungarees, Inc.* et al., (N.D. Cal. 2013); *Pimental et al v. Google, Inc. et al.,* (N.D. Cal. 2013); *In re Jiffy Lube Spam Text Litigation* (S.D. Cal. 2013); *Lee et al v. Stonebridge Life Ins. Co. et al.,* (N.D. Cal. 2013); *Gomez et al v. Campbell-Ewald Co.* (C.D. Cal. 2014); *Murray et al. v. Bill Me Later, Inc.,* 12-cv-4789 (N.D. Ill. 2014); *Valladares et al v. Blackboard, Inc.* (Cir. Ct. Cook County, Ill. 2016); *Hooker et al. v. Sirius XM Radio, Inc.* (E.D. Va. 2016); *Seal et al. v. RCN Telecom Services, LLC,* (Cir. Ct. Cook County, Ill. 2017); *Manouchehri, et al. v. Styles for Less, Inc., et al.,* (S.D. Cal. 2017); *Vergara et al. v. Uber*

2

FILED DATE: 2/19/2019 12:40 PM   2019CH02032

*Technologies, Inc.* (N.D. Ill. 2017); *Flahive et al v. Inventurus Knowledge Solutions, Inc.* (Cir. Ct. Cook County 2017).

6.     I am a graduate of Loyola University Chicago School of Law. I have been practicing law since 2016 and have been admitted to practice in the Illinois Supreme Court and in the U.S. District Court for the Northern District of Illinois. I am a Certified Information Privacy Professional, United States Private Sector (CIPP/US).

7.     McGuire Law, P.C. has diligently investigated the facts and claims in this matter and will continue to diligently investigate and prosecute this matter. McGuire Law, P.C. has also dedicated substantial resources to this matter and will continue to do so. McGuire Law, P.C. has the financial resources necessary to fully prosecute this action through trial and to provide the necessary and appropriate notice to the class members should this proposed class be certified.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 19, 2019 in Chicago, IL.

/s/   Jad Sheikali
*One of Plaintiff's Attorneys*

3

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

2020 - Served                    2121 - Served
2220 - Not Served                2221 - Not Served
2320 - Served By Mail            2321 - Served By Mail
2420 - Served By Publication     2421 - Served By Publication
Summons - Alias Summons                          (06/28/18) CCG 0001

FILED
3/8/2019 10:55 AM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2019CH02032

FILED DATE: 3/8/2019 10:55 AM   2019CH02032

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

ERIC KROHM, individually and for a class,

(Name all parties)

v.

EPIC GAMES, INC., a Maryland corporation.

Case No. ____2019-CH-02032____

EPIC GAMES, INC., c/o The Corporation Trust, Incorporated
2405 York Road, Suite 201
Lutherville Timonium, MD 21093

☑ **SUMMONS**   ☐ **ALIAS SUMMONS**

To each Defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit https://efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://www.illinoiscourts.gov/FAQ/gethelp.asp.**

Witness: _____
3/8/2019 10:55 AM DOROTHY BROWN

Atty. No.: __56618__

Atty Name: __Jad Sheikali__

Atty. for: __Plaintiff__

Address: __55 West Wacker Drive, 9th Fl.__

City: __Chicago__    State: __IL__

Zip: __60601__

Telephone: __312-893-7002__

Primary Email: __jsheikali@mcgpc.com__

Secondary Email: __dgerbie@mcgpc.com__

Tertiary Email: __emeyers@mcgpc.com__

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person):

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois     cookcountyclerkofcourt.org**

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

FILED DATE: 3/8/2019 10:55 AM 2019CH02032

○ Richard J Daley Center
50 W Washington
Chicago, IL 60602

○ District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

○ District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

○ District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

○ District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

○ District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

○ Domestic Violence Court
555 W Harrison
Chicago, IL 60607

○ Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

○ Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

○ Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

◉ Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

○ Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours: 8:30 am - 4:30 pm

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**    cookcountyclerkofcourt.org

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| ERIC KROHM, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | No. 19-CH-02032 |
| v. | ) ) | Hon. Celia G. Gamrath |
| EPIC GAMES, INC., a Maryland corporation, | ) ) ) | **Jury Demanded** |
| *Defendant.* | ) | |

*Notice and Acknowledgment of Receipt of Summons and Complaint*

## NOTICE

To:

Epic Games, Inc.
c/o Jeffrey Jacobson
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
jjacobson@kelleydrye.com

The enclosed summons and complaint are served pursuant to Section 2-213 of the Code of Civil Procedure.

You must complete the acknowledgment part of this form and return one copy of the completed form to the sender within 30 days.

You must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within 30 days, you (or the party on whose behalf you are being served) may be served a summons and complaint in any other manner permitted by law.

1

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the complaint within 60 days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

I declare, under penalty of perjury, that this notice and acknowledgment of receipt of summons and complaint will have been served by electronic mail on March 1, 2019.


By:  /s/ Jad Sheikali
       Jad Sheikali
       One of Plaintiff's Attorneys

Date of Signature: March 8, 2019


## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the summons and of the complaint in the above-captioned matter via electronic mail at jjacobson@kelleydrye.com.

PRINT or TYPE Name  Matthew C. Luzadder, IL Bar No. 6283424

Relationship to Entity/Authority to Receive Service of Process

Attorney

(Not Applicable if you are the name Defendant or Respondent)

Signature  Matthew C. Zyadder

Date of Signature  March 11, 2019

2